**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CRIMINAL ACTION NO. 1:08CR-00032-TBR(1)**

**UNITED STATES OF AMERICA**                                                                                    **PLAINTIFF**

**VS.**

**FREDDIE STONE, JR.**                                                                                                  **DEFENDANT**

**FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATION**

**BACKGROUND**

Before the Court is a motion to suppress filed by Defendant, Freddie Stone, Jr. ("Mr. Stone") (DN 27). The motion pertains to a warrantless search of the passenger compartment of Mr. Stone's pickup truck following his arrest on April 11, 2008, in Taylor County, Kentucky (DN 27). Plaintiff, United States of America ("United States"), filed an objection to the motion and requested an evidentiary hearing (DN 29). The District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), referred this matter to the undersigned to conduct a suppression hearing and issue findings of fact, conclusions of law and a recommendation (DN 33, 41).

The undersigned conducted an evidentiary hearing on March 11, 2008 (DN 40). Present at the hearing were Mr. Stone, who was in custody, and his retained counsel Danny P. Butler and Steven O. Thornton (DN 40). Also present at the hearing was David R. Weiser, Assistant United States Attorney, on behalf of the United States (DN 40). During the hearing, the United States presented its evidence through the testimony of Officer Jerry McQueary ("Officer McQueary"), Sergeant Phillip Barton ("Sergeant Barton"), and Officer Wayne Wilson ("Officer

Wilson") with the Law Enforcement Division of the Kentucky Fish and Wildlife Resources ("KFWR") (DN 40). Mr. Stone presented his evidence through the testimony of Jenny Grosshans ("Grosshans") and Defendant's Exhibit 1 (DN 40). At the close of the evidence, counsel for the parties indicated further briefing would not be necessary.

Since the United States did not submit a pre-hearing memorandum setting forth its argument in support of the warrantless search, the undersigned asked it to do so orally. Additionally, the undersigned offered Mr. Stone the opportunity to orally supplement the arguments set forth in his pre-hearing memorandum. Mr. Stone declined the invitation. During its oral argument the United States could not cite any cases in support of its inevitable discovery argument (DN 40). Therefore, the undersigned directed the United States to submit, within ten (10) days, the case citations that supported its argument. The United States has timely filed a memorandum setting forth the citations (DN 42). This matter is now ripe for determination.

FINDINGS OF FACT

During the evidentiary hearing the United States presented evidence regarding what occurred when KFWR officers went to Mr. Stone's residence on May 28, 2008. While Mr. Stone used cross-examination to challenge the recollections of the KFWR officers, he did not present a witness who contradicted their testimony.

On March 28, 2008, Officer McQueary, Sergeant Barton, and Officer Wilson traveled to Taylor County, Kentucky to investigate reports of Mr. Stone maintaining dangerous exotic wildlife in his residence, in violation of Kentucky wildlife laws. When they arrived at the house trailer that morning they were greeted by Amy Stone ("Ms. Stone"), Mr. Stone's wife (DN 1). Ms.

Stone indicated that Mr. Stone was at the hospital having a finger removed because of a venomous snake bite. Ms. Stone consented to the KFWR officers entering the house trailer and conducting a search of the residence. During their search, the KFWR officers observed four young children and a number of dangerous exotic reptiles (e.g., a pit viper, a monitor lizard, a diamond back rattle snake and two baby alligators) and spiders housed in aquariums, with screen tops, located throughout the house trailer. The KFWR officers also recalled a strong pet store like odor throughout the house trailer. Additionally, via telephone, Mr. Stone provided Sergeant Barton with the combination to a small safe in the residence and his consent to open the safe and examine its contents. Inside the safe Sergeant Barton found a blue Crown Royal bag containing $30,000 in cash which was inventoried and returned to the safe. Ms. Stone admitted to the KFWR officers that she and her husband did not have the necessary permits to transport each of the dangerous exotic wildlife into Kentucky. She also admitted they did not have the necessary permits to keep the dangerous and exotic wildlife in their residence. Mr. Stone's mother removed the four young children from the residence and the KFWR officers removed the dangerous exotic wildlife.

On April 11, 2008, the three KFWR officers returned to Mr. Stone's residence with State arrest warrants for Mr. and Ms. Stone on charges of first degree wanton endangerment. Through the testimony of the three KFWR officers, the United States presented its evidence regarding the arrest of Ms. Stone; the arrest of Mr. Stone; the arrest of co-defendant, Orvey Harris, Jr. ("Mr. Harris"); and the search of the passenger compartment of Mr. Stone's pickup truck. Mr. Stone cross-examined the KFWR officers regarding their recollections of what occurred. Additionally, through the testimony of Ms. Grosshans, Mr. Stone presented evidence regarding his arrest, Mr. Harris' arrest, and the search of the passenger compartment of Mr. Stone's pickup truck.

Ms. Grosshans' recollections differed from those of the KFWR officers on a number of collateral matters. However, her testimony was consistent with that of the KFWR officers regarding Mr. Stone's temporal and spatial relationship to the pickup truck at the time of his arrest and the search of the pickup truck's passenger compartment.

In the early afternoon hours of April 11, 2008, the KFWR officers arrested Ms. Stone inside the residence, placed her in handcuffs, and they were in the process of escorting her outside as Mr. Stone drove his white Dodge pickup truck into the driveway. Since there were other vehicles parked in front of the porch, Mr. Stone drove past the porch and parked on the far side of the vehicles. The KFWR officers recalled that Mr. Stone parked perpendicular to the residence with the headlights facing toward the residence. Ms. Grosshans' testimony and diagram indicates he parked at a thirty to forty-five degree angle. Mr. Harris was seated on the passenger side of the pickup truck. Additionally, a black car followed Mr. Stone's pickup truck into the driveway and stopped behind the other parked vehicles. Inside that car were Ms. Grosshans, in the passenger side front seat, and her fiancé in the driver's seat.

Mr. Stone exited the pickup truck from the driver's side door and walked toward the back of the pickup truck. According to the KFWR officers, Sergeant Barton and Officer Wilson met Mr. Stone in the area between the driver's side rear wheel and taillight. Ms. Grosshans agreed with the location of the meeting but recalled only Sergeant Barton met Mr. Stone[1]. Sergeant Barton advised Mr. Stone that he had a warrant for Mr. Stone's arrest on charges of first degree wanton endangerment. Mr. Stone then turned around and started to walk back toward the driver's side door.

---

[1] According to Ms. Grosshans, Officer Wilson was on the passenger side of the pickup truck dealing with Mr. Harris.

4

Sergeant Barton commanded Mr. Stone to stop and indicated he was under arrest. Mr. Stone did stop. Next, Sergeant Barton handcuffed Mr. Stone and performed a pat down search that revealed a plastic bag containing $10,000 in cash in Mr. Stone's pants pocket. Meanwhile, Officer McQueary placed Ms. Stone in a law enforcement vehicle so he could assist Sergeant Barton and Officer Wilson in dealing with Messrs. Stone and Harris.

      According to the KFWR officers, Officer McQueary took control of Mr. Stone while Sergeant Barton and Officer Wilson proceeded to the passenger side of the pickup truck to deal with Mr. Harris. The KFWR officers testified that Mr. Harris complied with their directions to exit the pickup truck and step approximately a body length away from the pickup truck. The KFWR officers testified that despite their warnings, Mr. Harris kept trying to put his hands in his pockets. Out of concern for officer safety, Sergeant Barton handcuffed Mr. Harris and performed a pat down search. The pat down search revealed an unmarked bottle containing what appeared to be Oxycontin pills. Sergeant Barton placed Mr. Harris under arrest for possession of Oxycontin without a prescription. Meanwhile, Officer McQueary performed a post arrest search of Mr. Stone. Additionally, because Mr. Stone kept trying to signal to Mr. Harris, the KFWR officers moved Mr. Stone and Mr. Harris in different directions several feet away from the pickup truck.

      The KFWR officers testified that three times Officer McQueary asked Mr. Stone for consent to search the pickup truck and each time Mr. Stone responded "I don't care". They also testified that when Officer McQueary asked a fourth time he explained to Mr. Stone that he needed a yes or no answer to the request. According to the KFWR officers, Mr. Stone then responded by answering "yes". On cross-examination defense counsel asked each KFWR officer why he did not have Mr. Stone sign a written consent to search form. Each KFWR officer indicated an

unwillingness to accept the security risk posed by releasing Mr. Stone from the handcuffs because of his formidable size and reputation of being a cage fighter.

The KFWR officers testified that Sergeant Barton searched the driver's side and Officer Wilson searched the passenger side of the passenger compartment to Mr. Stone's pickup truck. Both KFWR officers noted a cage with live mice and an odor reminiscent of the pet shop odor in the Stone residence on March 28th. The KFWR officers testified that Officer Wilson found under the passenger side of the front seat a blue Crown Royal bag that contained hundreds of Oxycontin and other types of prescription pain pills.

Ms. Grosshans testified that Sergeant Barton was on the passenger side of the truck and he discovered the blue Crown Royal bag. According to Ms. Grosshans, after Sergeant Barton picked up the blue Crown Royal bag he commented "we're going to do this right". She testified that Sergeant Barton then asked Mr. Stone for consent to search the pickup truck and Mr. Stone answered "no". Ms. Grosshans also recalled the search occurring before Mr. Harris was arrested.

## CONCLUSIONS OF LAW

The United States concedes that the blue Crown Royal bag was discovered during a warrantless search of the passenger compartment of Mr. Stone's pickup truck. A warrantless search is per se unreasonable under the Fourth Amendment unless it falls within one of the few specifically delineated exceptions. <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967); <u>United States v. Radka</u>, 904 F.2d 357, 360 (6th Cir.1990). The United States contends that the search incident to lawful arrest exception recognized in <u>New York v. Belton</u>, 453 U.S. 454 (1981), and interpreted in <u>Thornton v. United States</u>, 541 U.S. 615 (2004) applies in this case. The undersigned agrees because

6

the arrest warrant provided the probable cause to make a lawful arrest and the search was incident to the arrest.

In <u>Belton</u>, the Supreme Court held, "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. at 460. The defendant in <u>Belton</u> was stopped for a traffic offense and was subsequently ordered out of the car and arrested. <u>Id.</u> at 454-455. Despite the fact that the defendant was physically outside the vehicle at the time it was searched, the Supreme Court held the officers had conducted a valid search incident to arrest. <u>Id.</u> at 462-463.

In <u>Thornton</u>, the Supreme Court addressed a situation in which the defendant was not in his vehicle at the time the police arrived at the scene. 541 U.S. at 617-618. Instead, as here, the defendant had parked and exited from his vehicle momentarily before being accosted by the police. <u>Id.</u> The Supreme Court held "so long as an arrestee is the sort of 'recent occupant' of a vehicle such as petitioner was here, officers may search that vehicle incident to the arrest." <u>Id.</u> at 623-624.

At issue here is whether Mr. Stone is "the sort of 'recent occupant' " envisioned by the Supreme Court in <u>Thornton</u>. Although the Supreme Court in <u>Thornton</u> indicated "an arrestee's status as a 'recent occupant' may turn on his temporal or spatial relationship to the car at the time of the arrest and search," <u>Id.</u> at 622, it declined to specify the physical distance that separated the defendant from his vehicle at the time of the arrest or the amount of time that had elapsed since he had exited his vehicle. <u>Id.</u> at 617-624. The undersigned does note, however, the Supreme Court expressly declined to limit this term to a person who is within "reaching distance" of the vehicle. <u>Id.</u> at 622 n. 2.

With regard to Mr. Stone's temporal relationship to the pickup truck, all of the testimony indicates the arrest occurred within a few brief seconds after he exited the pickup truck. Additionally, all of the testimony shows the search of the passenger compartment happened within moments thereafter. As for Mr. Stone's spatial relationship to the pickup truck, he was arrested next to the truck bed and within a few short feet of the driver's side door to the cab. When the search of the passenger compartment began Mr. Stone was in handcuffs and only a few yards away from the pickup truck. After considering the totality of the evidence, the undersigned concludes Mr. Stone is the sort of "recent occupant" envisioned by the Supreme Court in Thornton. Therefore, the search of the passenger compartment to Mr. Stone's pickup truck falls squarely within the range of searches deemed permissible by the Supreme Court in Belton and Thornton.

The blue Crown Royal bag was found during the search of the passenger compartment. When the bag was opened hundreds of Oxycontin and other types of prescription pain pills were discovered. The Supreme Court in Belton indicated that during a search incident to arrest any containers found within the passenger compartment may be searched regardless of whether they are open or closed. 453 U.S. at 460-461. For this reason, the search of the Crown Royal bag did not violate the Fourth and Fourteenth Amendments to the United States Constitution.

In his pre-hearing memorandum Mr. Stone argues the search incident to arrest must be invalidated because there was no reason to believe evidence of a crime would be hidden within his pickup truck (DN 27). This argument is without merit. The Supreme Court has clearly indicated the authority to search incident to a lawful arrest does not depend on whether the officer has probable cause to believe weapons or evidence will be found. Thornton, 541 U.S. at 621-623; Belton, 453 U.S. at 461; United States v. Robinson, 414 U.S. 218, 235 (1973). Instead, it depends

on whether the officer has probable cause to make the arrest. Robinson, 414 U.S. at 235. If the arrest is based on probable cause it is a reasonable intrusion under the Fourth Amendment; since that intrusion is lawful, a search incident to arrest requires no additional justification. Robinson, 414 U.S. at 235; see also Thorton, 541 U.S. at 623 ("Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment."). Here, the arrest warrant provided the probable cause to make the arrest. Thus, the search incident to Mr. Stone's arrest required no additional justification.

In light of the above conclusions, the undersigned concludes it is not necessary to address the issues of whether Mr. Stone consented to the search, whether the officers had probable cause to search the truck, whether the search was incident to Mr. Harris' arrest, and whether the inevitable discovery doctrine applies.

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes the evidence sought to be suppressed was discovered during a search incident to a lawful arrest and, therefore, recommends that the motion to suppress filed by the Defendant, Freddie Stone, Jr., be DENIED.

## NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within ten (10) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be filed within ten (10) days or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, U.S. 140 (1984).

Copies:   Counsel of Record