UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO.: 1:08-CR-32-R

UNITED STATES OF AMERICA                                                      PLAINTIFF

v.

FREDDIE STONE, JR. and
ORVEY CARL HARRIS, JR.                                                        DEFENDANTS

**OPINION AND ORDER**

This matter is before the Court upon Defendant Freddie Stone, Jr.'s Motion to Exclude Evidence (Docket #27). The United States has responded (Docket #29, 42). The Magistrate Judge conducted an evidentiary hearing on March 11, 2009 and issued a Report and Recommendation (Docket #43). Defendant has objected (Docket #45) and filed a supplement to his motion (Docket #48). The United States has responded (Docket #54). Defendant has filed a reply (Docket #57). This matter is now ripe for adjudication. For the following reasons, Defendant's motion is DENIED.

**BACKGROUND**

On March 28, 2008, Officer Jerry McQueary ("Officer McQueary"), Sergeant Phillip Barton ("Sergeant Barton"), and Officer Wayne Wilson ("Officer Wilson") of the law enforcement division of the Kentucky Fish and Wildlife Resources traveled to the Stone residence in Campbellsville, Kentucky to investigate reports that the Stones kept dangerous exotic wildlife. Defendant Freddie Stone, Jr. was not at home. His wife, Amy Stone, consented to a search of the residence, which revealed that the Stones' four young children lived among a number of dangerous exotic reptiles. The officers noted a strong pet store odor throughout the home and believed Amy Stone to be high at the time.

Via telephone, Defendant provided Sergeant Barton with the combination to a small safe in the residence and his consent to open the safe and examine its contents. Inside the safe Sergeant Barton discovered a blue Crown Royal bag containing $30,000 in cash. Sergeant Barton returned the bag to the safe. Amy Stone admitted that she and her husband did not possess the necessary permits to keep the exotic wildlife.

On April 11, 2008, the same law enforcement officers executed an arrest warrant for Amy Stone and Defendant at their residence. The arrest warrant authorized their arrests for four counts of wanton endangerment in the first degree for possession of dangerous animals in the home with children. Upon arriving at the Stone residence, the officers found only Amy Stone at home. As the officers escorted her from the residence, Defendant returned home. Defendant parked his pickup truck in the driveway. A black car followed behind the pickup truck into the driveway and also parked. Jenny Gosshans and her fiance sat inside the black car.

Defendant exited from the driver's side door of the pickup truck and walked toward the back of the truck in the direction of the officers. When Defendant exited the truck, the officers smelled a strong pet store odor similar to that inside the home. Sergeant Phillip Barton advised Defendant that he had a warrant for his arrest. When Defendant turned around and began walking back toward the truck, Sergeant Barton handcuffed and arrested him. A pat down search of Defendant's body revealed a plastic bag containing $10,000 in cash in Defendant's pants pocket.

While Defendant was in custody, Sergeant Barton and Officer Wayne Wilson proceeded to the passenger side of the car where Defendant Orvey Carl Harris, Jr. ("Harris") was sitting. The officers instructed Harris to exit the truck. Harris did so, stepping approximately a body

lengths distance from the truck. When Harris repeatedly tried to put his hands in his pockets after being warned by the officers not to do so, the officers handcuffed him and performed a pat down search. This search revealed an unmarked bottle that appeared to contain Oxycontin pills. Sergeant Barton then placed Harris under arrest for possession of Oxycontin without a prescription.

The parties dispute whether Defendant consented to a search of the truck. The officers testified that Officer McQueary asked Defendant three times for consent to search the truck and that each time Defendant replied, "I don't care." On the fourth time, Officer McQueary explained that he needed a "yes" or "no" answer. According to the officers, Defendant then said "yes" to the search. Defendant's witness, Jenny Grosshans, testified that Defendant never consented to a search of the truck. She also recalled the search occurring before Harris was arrested.

Inside the truck the officers discovered a cage filled with live mice and a blue Crown Royal bag containing hundreds of Oxycontin and other types of prescription pain pills. On October 15, 2008, Defendant moved to exclude this evidence as unlawfully obtained in violation of Fourth Amendment. The United States filed an objection to the motion and requested an evidentiary hearing. On March 11, 2009, an evidentiary hearing was conducted by the magistrate judge. On April 7, 2009, the magistrate judge issued his report and recommendation finding that the search incident to arrest exception applied to circumvent the otherwise unlawful warrantless search of Defendant's vehicle. On April 21, 2009, the United States Supreme Court issued its opinion in *Arizona v. Gant*, 129 S.Ct. 1710, discussing the search incident to arrest exception. On May 8, 2009, Defendant filed a supplement to his objections to the report and

recommendation in light of the *Gant* decision.

## DISCUSSION

"[T]he police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure." *Terry v. Ohio*, 392 U.S. 1, 20 (1968). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is a search incident to a lawful arrest.

In *Arizona v. Gant*, the Supreme Court clarified its prior opinions concerning the search incident to arrest exception. 129 S.Ct. 1710 (2009). The Court explained that there are two instances in which a warrantless search incident to a lawful arrest is tolerable under the Fourth Amendment: (1) "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search," and (2) "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* at 1719 (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004)). The justifications for the search incident to arrest exception are officer safety and evidence preservation. *Id.* at 1716. "When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." *Id.* at 1723-24.

**I.    Search Incident to Defendant's Arrest**

Defendant argues that the search of his truck was unlawful under *Gant* because he was already handcuffed and beyond reaching distance of the vehicle when the search occurred. Defendant also argues that it was unreasonable to believe that evidence relevant to the crime of

4

wanton endangerment might be found. The United States responds that the officers had reason to believe that evidence relevant to the crime might be found because they smelled the same strong pet odor emanating from the vehicle that they had previously smelled inside the Stone residence. The officers testified at the evidentiary hearing that this odor indicated to them that there might be more dangerous reptiles in the truck. Defendant replies that the odor only indicated that the owner of the truck was also a resident of the home, not that there were additional reptiles in the truck.

Defendant was already in custody and outside reaching distance of the passenger compartment of the truck at the time of the search. Under these facts alone, the warrantless search of Defendant's vehicle was unjustified. It is less clear whether the strong pet odor created a reasonable belief that other dangerous reptiles were to be found inside the vehicle. However, the Court need not decide this issue because it is clear that the evidence is admissible as a search incident to Harris's arrest.

## II.     Search Incident to Harris's Arrest

Unlike Defendant, who was arrested for wanton endangerment, Harris was arrested for drug possession. It is reasonable for an officer to believe that a person lawfully arrested for a drug offense may have further contraband or similar evidence relevant to the crime in the vehicle from which he just exited. *Thornton*, 541 U.S. at 632 (Scalia, J., concurring); *New York v. Belton*, 453 U.S. 454, 462-63 (1981). Therefore, under the search incident to arrest exception, it was lawful for the officers to search the truck following Harris's arrest.

Once lawfully obtained, the evidence found in the search could be used against Defendant. *Jabara v. Webster*, 691 F.2d 272, 277 (6th Cir. 1982). Furthermore, the discovery of

pills on Harris, in addition to the officers earlier observation that Amy Stone was on drugs, created a reasonable ground for belief that more drugs may be located inside the truck. For these reasons, the Court finds that the evidence may be admitted under the search incident to arrest exception.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant Freddie Stone, Jr.'s Motion to Exclude Evidence is DENIED.